### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **RONALD M. VAN PELT,**<br>**#R00514,** | |
| **Plaintiff,** | **Case No. 22-cv-02539-SPM** |
| **v.** | |
| **PINCKNEYVILLE CORRECTIONAL**<br>**CENTER,**<br>**M. MYERS,**<br>**B. KIRKMAN,**<br>**R. ROELAND, and**<br>**JOHN DOE 1,**<br>          **Defendants.** | |

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Plaintiff Ronald Van Pelt, an inmate of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for constitutional deprivations that occurred at Pinckneyville Correctional Center. The Complaint is now before the Court for review pursuant to 28 U.S.C. § 1915A, which requires the Court to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, meritless, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### THE COMPLAINT

At the time of the events described in the Complaint, Plaintiff worked in the dietary kitchen during the 5:00 a.m. to the 12:00 p.m. shift. (Doc. 1, p. 6-7). He alleges that on three different

occasions, when he would leave the dietary kitchen, he was singled out and subjected to sexual harassment and abuse by Sergeant Myers.

On February 28, 2020, Plaintiff and two other inmates left dietary early to attend chapel services. The other two inmates walked by Sergeant Myers without being searched, by when Plaintiff walked by Myers, he was asked to step to the side for a search. (*Id.* at p. 7). Myers "continuously" interrogated Plaintiff about what he had in his pants. Myers then made sexual comments about Plaintiff's penis and told him, "I'm dick watching, if that's yo[ur] dick let me see yo[ur] dick." Plaintiff then grabbed his own penis and said, "see I don't have nothing on me." Then Myers let Plaintiff leave and go to chapel. (*Id.*).

On March 4, 2020, Sergeant Myers again showed up as Plaintiff was leaving his dietary shift early to attend chapel services. (Doc. 1, p. 7). Myers interrogated Plaintiff and said, "he was dick watching" and asked Plaintiff what he had in his pants. Myers searched Plaintiff and grabbed Plaintiff's "private parts." Plaintiff made a PREA phone call and reported the incident. (*Id.*).

On March 30, 2020, around 7:40 a.m., Plaintiff and other inmates left the dietary kitchen and went to the housing unit to receive medication from the "med line." (Doc. 1, p. 6).   Four other inmates were subjected to a search on the "inner walk through" and then instructed to walk through the metal detector. Plaintiff, however, was ordered by Sergeant Myers to the bathroom to be subjected to a strip search. Plaintiff told Sergeant Myers that a strip search was out of order and not standard routine for dietary workers. Plaintiff had to return to dietary to resume work in 20 minutes, and there was not enough time for a strip search to be conducted, wait in the med line, and then return to the dietary kitchen. He also told Myers that he has never been stripped searched during med line in the years he has been working in the dietary kitchen. Further, a lieutenant was not present, as is the practice in all other dietary institutional strip searches. Myers told Plaintiff to shut up and pull his pants down, "you know what time it is I'm dick watching today." (*Id.*). Plaintiff

Page 2 of 8

refused to submit to the strip search unless a lieutenant was present. Myers and Plaintiff began to argue. Myers told Plaintiff that if he did not comply with orders then he would be taken to segregation. Plaintiff complied and pulled his pants down and placed his hands above his head. Myers then conducted the search in a "provocative" manner, grabbing and fondling Plaintiff's "private parts." During the strip search, Myers made sexual, derogatory comments to Plaintiff. (*Id.*).

Because Plaintiff argued with Myers and repeatedly asked for a lieutenant to be present, Sergeant Myers wrote a false disciplinary report stating that he had observed Plaintiff on the "dietary walk inner parameter" with four gloves filled with bleach on Plaintiff's waist. (Doc. 1, p. 7). Plaintiff states that he was not searched on the inner parameter of the dietary walk. He asserts that another inmate was searched by another correctional officer named Roeland on the inner dietary walk. After an unfair hearing, Plaintiff was punished with one month demotion to C-grade status and one month of commissary restrictions. (*Id.* at p. 15).

## Preliminary Dismissals

The Court dismisses all claims against Pinckneyville Correctional Center. Pinckneyville Correctional Center is not a "person" subject to suit for money damages under Section 1983. *Thomas v. Ill.*, 697 F.3d 612, 613 (7th Cir. 2012). Neither can a state agency be sued for prospective injunctive relief in federal court. *See Quick v. Ill. Dep't of Fin. & Prof'l Regulation*, 468 F. Supp. 3d 1001, 1009 (N.D. Ill. June 23, 2020) (collecting cases).

The Court also dismisses any claims Plaintiff intended to bring against Correctional Officer John Doe 1. Plaintiff does not assert any allegations against this unidentified individual in the body of the Complaint. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); FED. R. CIV. P. 8. Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).

Finally, the Court dismisses Plaintiff's claim that he was denied Equal Protection due to the issuance of a false disciplinary report and unjust punishment. (Doc. 1, p. 7). He has not, however, alleged any additional facts to support an equal protection violation by any Defendant. *See, e.g., Srail v. Village of Lisle, Ill.,* 588 F.3d 940, 943 (7th Cir. 2009). *See also Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009) (conclusory legal statements are not sufficient to state a claim).

DISCUSSION

Based on the allegations in the Complaint and Plaintiff's articulation of his claims, the Court designates the following counts in this pro se action:

**Count 1:**    Eighth Amendment claim against Myers for subjecting Plaintiff to unconstitutional searches on February 28, 2020, March 4, 2020, and March 30, 2020.

**Count 2:**    Fourth Amendment claim against Myers for conducting an unreasonable strip search on March 30, 2020.

**Count 3:**    First Amendment claim against Myers for violation of Plaintiff's right to free speech.

**Count 4:**    Fifth Amendment due process claim against Myers for denying Plaintiff the opportunity to speak with a lieutenant prior to being strip searched on March 30, 2020.

**Count 5:**    Fourteenth Amendment claim against Myers, Roeland, and Kirkman for the denial of procedural due process associated with the issuance of a false disciplinary ticket and subsequent unfair hearing and punishment.[1]

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice**

---

[1] Plaintiff states that his right to due process under the Fifth Amendment was also violated by the Adjustment Committee's failure to do a thorough investigation and recording false information on the final summary report. (Doc. 1, p. 7-8). The Fifth Amendment supplies the guarantee of procedural due process to a federal inmate, and so, the Court will analyze Plaintiff's procedural due process claims under the Fourteenth Amendment. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002).

as inadequately pled under the *Twombly*[2] pleading standard.

## Counts 1 and 2

Plaintiff claims that Myers singled him out and sexually abused him verbally and physically during unnecessary bodily searches conducted on February 28, 2020, March 4, 2020, and March 30, 2020. *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). This is sufficient to state an Eighth Amendment claim, and Count 1 will proceed against Myers.

Plaintiff has also stated a claim for violation of the Fourth Amendment's right to bodily privacy for the unreasonable strip search that was conduct by Myers on March 30, 2020. *See Henry v. Hultett,* 969 F. 3d 769, 779 (7th Cir. 2020).

## Count 3

Plaintiff claims that Myers violated his right to free speech by ordering him to "shut the fuck up" when he asked for a lieutenant to be present during the strip search on March 30, 2020. (Doc. 1, p. 6). He also asserts that Myers retaliated against him for arguing and requesting to speak with a lieutenant by writing a false disciplinary report against him. (*Id.* at p. 7).

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett,* 139 S. Ct. 1715, 1722 (2019). Count 3 will proceed against Myers to the extent Plaintiff claims he was retaliated against for requesting to speak to a lieutenant about the impropriety of the strip search.

Plaintiff does not, however, have a First Amendment right to speak to a prison employee in a "confrontational, disorderly manner." *Watkins v. Kasper,* 599 F.3d 791, 797–98 (7th Cir. 2010). Thus, to the extent Plaintiff is asserting a First Amendment claim against Myers for retaliating because he was arguing, such claim is dismissed. Neither are free speech rights

---

[2] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

implicated simply by the fact Myers instructed Plaintiff to stop talking. This claim is also dismissed.

### Count 4

Plaintiff asserts that his Fifth Amendment constitutional right to due process was violated when he was denied the opportunity to speak with a lieutenant on March 30, 2020. (Doc. 1, p. 6). The Court is not aware of a constitutional right to speak to a prison official of Plaintiff's choosing at his request or how the denial to speak to a certain official amounts to a constitutional violation. While there may be a state regulation or prison rule requiring that a lieutenant be present during a strip search, the violation of a prison policy does not form the basis for a constitutional claim. *See Scott v. Edinburg,* 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). Count 4 is dismissed.

### Count 5

"The Due Process Clause of the Fourteenth Amendment applies only to deprivations of life, liberty, and property." *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). When an inmate raises a procedural due process claim based on false charges and related to disciplinary proceedings, the Court undertakes a two-part analysis. Id. The Court first evaluates whether the prisoner was deprived of a protected liberty interest, and then second, evaluates whether the process he was afforded was constitutionally deficient. *Id*. (citing *Hess v. Bd. of Trs. of S. Ill.* Univ., 839 F.3d 668, 673 (7th Cir. 2016)).

Here, as a result of the false disciplinary ticket and unfair hearing, Plaintiff was punished with the demotion in grade status and commissary restrictions. This type of punishment does not raise due process concerns. *See Hoskins v. Lenear,* 395 F. 3d 372, 375 (7th Cir. 2005); *Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997). Count 5 is dismissed.

## DISPOSITION

For the reasons stated, the Complaint survives preliminary review pursuant to Section 1915A. **COUNTS 1** and **2** shall proceed against Myers. **COUNT 3** is dismissed in part and shall proceed in part against Myers. **COUNTS 4** and **5** are **DISMISSED without prejudice**.

All claims against Pinckneyville Correctional Center are **DIMISSED with prejudice**. All claims against Kirkman, Roeland, and John Doe 1 are **DISMISSED without prejudice.** The Clerk of Court is **DIRECTED** to terminate these defendants as parties to this case.

The Clerk of Court **SHALL** prepare for Myers the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendants' place of employment. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendant should respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   July 14, 2023**

_s/Stephen P. McGlynn_____
**STEPHEN P. MCGLYNN**
**United States District Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.