## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**RONALD M. VAN PELT,**

                    **Plaintiff,**

**v.**                                                  **Case No. 22-CV-02539-SPM**

**MARCUS MYERS,**

                    **Defendant.**

## <u>MEMORANDUM AND ORDER</u>

**MCGLYNN, District Judge:**

This matter is before the Court for consideration of the Motion for Summary Judgment filed by Defendant Marcus Myers. (Doc. 32). Having been fully informed of the issues presented, Defendant Myers's Motion for Summary Judgment is **GRANTED**.

### BACKGROUND

*Pro se* Plaintiff Ronald M. Van Pelt, a current Illinois Department of Corrections inmate at Danville Correctional Center, brought this suit for alleged deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983 that allegedly occurred while he was incarcerated at Pinckneyville Correctional Center.[1] (Doc. 1). At issue in this litigation are three bodily searches of Plaintiff which occurred on February 28, 2020; March 4, 2020; and March 30, 2020—Plaintiff claims that all three

---

[1] Plaintiff was incarcerated at Pinckneyville Correctional Center at all relevant times of the underlying events giving rise to this litigation.

searches were unconstitutional under the Eighth Amendment and that the March 30 search violated his rights under the Fourth Amendment, as well. (*See* Doc. 1; Doc. 8; Doc. 32, p. 3, ¶¶ 8, 10, 16). In addition, Plaintiff claims that his First Amendment rights were violated when Defendant Myers purportedly issued a false disciplinary report against Plaintiff in retaliation for Plaintiff having asked for a lieutenant to be present for the strip search on March 30, 2020. (*See* Doc. 1).

The undisputed facts, viewed in the light most favorable to Van Pelt, establish the following: at the time of all three search incidents, Van Pelt worked in the Pinckneyville dietary kitchen as a dishwasher during the 5:00 a.m. to 12:00 p.m. shift. (*See* Doc. 1, p. 6; Doc. 8, p. 1; Doc. 32, Ex. B 26:6−7). Plaintiff and other inmates who worked in the kitchen had access to certain items such as knives, bleach, food, and utensils that they were not allowed to remove from the kitchen. (Doc. 32, ¶¶ 6−7; *id.*, Ex. B 30:6−25, 31:1−8). Officers at Pinckneyville Correctional Center had the authority to search inmates at any time "if they feel the need to for safety and security of the institution." (Doc. 32, p. 2, ¶ 5; *id.*, Ex. B 33:9−12). Inmates, including Plaintiff, were pat-down searched every day by correctional officers when they left the kitchen to ensure that no contraband was removed from the kitchen. (Doc. 32, ¶¶ 6−7; *id.*, Ex. B 30:6−25, 31:1−8). Defendant Myers was one such correctional officer who would conduct these searches of inmates leaving the kitchen; Myers, during these encounters, would say that he was "dick watching" because he was trying to see if inmates leaving the kitchen were attempting to smuggle bleach, and would call it "dick watching" because inmates would purportedly hide bleach in their pants. (Doc. 32, p. 3, ¶ 9; *id.*, Ex. B 21:2−25, 22:1−8).

On February 28, 2020, Plaintiff and other inmates were leaving the dietary kitchen early around 11:30 a.m. to attend chapel service when Van Pelt was searched by Myers. (Doc. 1, p. 7; Doc. 32, p. 3). Myers was waiting outside for Plaintiff and proceeded to interrogate him over what he had in his pants, stating "I know that ain't yo dick, that size," "how many times do I have to tell you I'm dick watching," and "if that's yo dick let me see yo dick." (Doc. 1, p. 7; Doc. 8, p. 2; Doc. 32, Ex. B, 32:1−7). Myers called Van Pelt over and searched him "a little but, but he didn't search [him] all the way" and asked Plaintiff whether he had bleach on him and stated: "I'm dick watching what you got on you," and "what's that right there, I know that ain't your dick," and further said "let me see your dick." (*See* Doc. 32, p. 3, ¶ 8; *id.*, Ex. B 28:2−25). Defendant Myers then instructed Plaintiff to turn around and let Myers search Plaintiff, and Plaintiff testified that "he was kind of rubbing up against my balls." (Doc. 32, Ex. B 29:6−13). Plaintiff told Myers that he was "going a little too far," but by then, the search was over, and Myers instructed Plaintiff to go. (Doc. 32, Ex. B 29:16−25). Plaintiff stated that he believed that officers doing this type of search up the leg were supposed to be looking for weapons for security purposes, but not bleach. (*Id.*).

On March 4, 2020, Plaintiff was again leaving work early for Wednesday chapel service when Defendant Myers was waiting outside the doors of the dish room. (Doc. 1, p. 7; Doc. 8, p. 2). Myers asked him "what you got on you" and informed Plaintiff that he was going to search him; Plaintiff additionally stated that Myers was "talking crazy to me, like harassing me basically, but it wasn't in a provocative manner." (Doc. 32, Ex. B 32: 14−25). During the search, Myers grabbed Plaintiff's

private parts and asked what it was and whether it was bleach. (Doc. 32, p. 3, ¶ 11, Ex. B 35:22−25). After he touched his private parts, he let Plaintiff go. (Doc. 32, Ex. B 37:4−8). Plaintiff alleges he made a Prison Rape Elimination Act ("PREA") call and reported the incident for sexual harassment. (Doc. 1, p. 7; Doc. 8, p. 2).

The March 30, 2020 search incident was the only strip search alleged in this case. On that day, at approximately 7:40 a.m., Van Pelt and four other inmates left the dietary kitchen and went to the housing unit to receive medication. (Doc. 1, p. 6; Doc. 8, p. 2). Defendant Myers was outside of the kitchen with three or four other officers, and all five of the individuals leaving the kitchen at that time were subjected to a search. (Doc. 32, p. 3, ¶ 14; Ex. B 40:16−23). The five inmates were initially searched on the "inner walk through" along a wall (with Plaintiff having been searched by another officer besides Myers) as well as instructed to walk through the metal detector, and then once that search was completed, Defendant Myers directed the other officers to bring the inmates into a separate administrative building to strip search all five of the inmates. (Doc. 1, p. 6; Doc. 32, p. 3, ¶ 14; Ex. B 44:13, 45:10−20, 46:13−19). Inmates were individually strip searched in a bathroom in the separate building, and Defendant Myers searched Plaintiff at this time. (Doc. 32, p. 4, ¶ 18; Ex. B 41:1−7). Myers asked Van Pelt to take his pants down and told him he was going to do a strip search; Plaintiff objected, saying that "this ain't no institutional strip search" and "why you searching me with no lieutenant present."[2] (Doc. 32, Ex. B 43:10−18). Plaintiff asked to speak to a lieutenant, to which Myers responded "I

---

[2] Plaintiff testified that he believed that a proper "institutional strip search" is one where everyone is strip searched, as opposed to someone being strip searched and singled out for no reason. (Doc. 32, Ex. B 43:25, 44:1−7).

don't give a fuck what, I don't care what you asked for, you ain't getting no lieutenant, I'm doing a routine strip search," and again directed to pull down his pants and told him that he was "dick watching."[3] (Doc. 32, Ex. B 43:2−4). Myers additionally threatened Plaintiff that if he did not comply, he would be taken to segregation. (Doc. 32, Ex. B 49:14−17). Plaintiff then pulled his pants down as Myers had asked, and was ordered by Myers to turn around and put his hands up. (Doc. 32, Ex. B 43:7−12). Myers then began his search while Van Pelt was still arguing with him. (Doc. 32, Ex. B 43:7−12).

Van Pelt testified at his deposition that Myers touched him on his private parts when his pants were pulled down. (Doc. 32, Ex. B 50:13−14). Van Pelt further specified that "I pulled my pants down and he was like pull them down all the way some more, I pulled them down, and he was like going around my boxers," and further stated that "I was still wearing underwear, we didn't get past all that, he just said pull your pants down." (Doc. 32, Ex. B 50:18−25). When counsel for Defendant again asked Van Pelt at his deposition "You were still wearing boxers at this point and then he grabbed you by your private parts again?", Van Pelt responded "Yeah, like, yeah." (Doc. 32, Ex. B 51:6−9). Van Pelt further stated that "he said I'm dick watching today and he went by the balls and by the boxers with my pants down, I'm like whoa, all right." (Doc. 32, Ex. B 51:17−19). While still arguing with Myers, Myers instructed Plaintiff to pull his pants back up and "get out of here." (Doc. 32, Ex. B 43:18−20). Van Pelt felt uncomfortable around Defendant Myers following the event, and stated

---

[3]  Plaintiff further testified that he believed that an officer could not strip search an individual without a lieutenant present. (Doc. 32, p. 3−4, ¶ 17; Ex. B 48:16−25, 49:1−9).

that he thinks about what happened every time he sees him. (Doc. 32, Ex. B 55:18−25, 56:1−2). Following the strip search, Van Pelt received a ticket for theft and possession of contraband, which reported (falsely, as Plaintiff claims) that Defendant Myers had found, upon searching Plaintiff on the "inner walk through," four gloves filled with bleach along Plaintiff's waistband. (*See* Doc. 1, p. 7; Doc. 8, p. 3; Doc. 32, Ex. B 53:3−11). Plaintiff was found guilty of the conduct alleged in the disciplinary ticket and punished with one month demotion to C-grade status and one month of commissary restrictions. (Doc. 1, p. 15; Doc. 8, p. 3; Doc. 32, Ex. B 53:19−21).

Plaintiff initiated the present action by filing a Complaint before this Court on November 1, 2022, originally naming Pinckneyville Correctional Center, Sgt. M. Myers, C/O B. Kirkman, CO-R. Roland, and C/O John Doe as Defendants. (Doc. 1). The Court conducted Preliminary Review of Van Pelt's Complaint on July 14, 2023.[4] (Doc. 8). The Court permitted Plaintiff to proceed on the following Counts: an Eighth Amendment claim against Defendant for subjecting Plaintiff to unconstitutional searches on February 28, 2020, March 4, 2020, and March 30, 2020 (Count 1); a Fourth Amendment claim against Defendant for conducting an unreasonable strip search on March 30, 2020 (Count 2); and a First Amendment claim against Defendant for violation of Plaintiff's right to free speech (Count 3).[5] (Doc. 8).

---

[4] In its Preliminary Review Order, this Court dismissed Van Pelt's claims against Pinckneyville Correctional Center because this Defendant was not a "person" subject to suit for money damages under § 1983, nor could this state agency be sued for prospective injunctive relief. (Doc. 8, p. 3). This Court additionally dismissed Defendant John Doe for failure to assert allegations within the body of the Complaint against this Defendant. (*See id.*).

[5] This Court additionally designated two additional Counts based on Plaintiff's articulation of his claims: in Count 4, Plaintiff brought a Fifth Amendment due process claim against Defendant Myers for denying Plaintiff the opportunity to speak with a lieutenant prior to being strip searched on March 30, 2020; and in Count 5, Plaintiff brought a Fourteenth Amendment claim against Defendants Myers, Roeland, and Kirkman for the denial of procedural due process associated with the issuance of a false

Defendant Myers filed his Motion for Summary Judgment and Memorandum in Support on January 27, 2025, arguing that he is entitled to summary judgment on all counts and raising an affirmative defense of qualified immunity. (Doc. 32). Plaintiff filed his Response on June 2, 2025. (Doc. 38). On June 16, 2025, Defendant filed a Reply. (Doc. 39).

## LEGAL STANDARD

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); s*ee Celotex*, 477 U.S. at 322–23. Stated another way, the nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) *(*citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

In determining a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th

---

disciplinary ticket and subsequent hearing and punishment. (Doc. 8, p. 4). Counts 4 and 5 were dismissed at preliminary review for failure to state a claim for deprivation of a known constitutional right. (*See id.*).

Cir. 2013) (citation omitted); *see Bennington v. Caterpillar Inc.,* 275 F.3d 654, 658 (7th Cir. 2001). A factual dispute precluding summary judgment must be material and genuine. *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). Whether a factual dispute is material is determined by the underlying substantive law. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 252 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008) (quoting *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008)).

The non-movant cannot simply rely on its pleadings; the non-movant must present admissible evidence that sufficiently shows the existence of each element of its case on which it will bear the burden of proof at trial. *Midwest Imps., Ltd. v. Coval*, 71 F.3d 1311, 1317 (7th Cir. 1995) (citing *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 596 (7th Cir. 1995); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.,* 998 F.2d 391, 394 (7th Cir. 1993), *cert. denied*, 510 U.S. 1111 (1994); *Celotex*, 477 U.S. at 323–24). Courts generally cannot resolve factual disputes on a motion for summary judgment. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) ("[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.") (citation and internal quotation marks omitted). In determining a motion for summary judgment, the Court may consider materials in the record in addition to cited materials. *See* FED. R. CIV. P. 56(c).

## ANALYSIS

### I. Statute of Limitations

Section 1983 claims borrow the statute of limitations for personal injury torts from the state in which the alleged violation occurred. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998). Illinois' applicable statute of limitations is two years. *Kalimara v. Ill. Dep't of Corr.*, 879 F.2d 276, 277 (7th Cir. 1989). Federal law, on the other hand, determines the date of accrual for calculating the two-year period. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). "Generally, a claim accrues when the plaintiff knows or has reason to know of the injury giving rise to the cause of action." *Id.* Under the continuing violation theory, however, a plaintiff may obtain relief for a time-barred act when that act is linked with the acts that fall within the statutory limitations period because the claim accrues on the date of the last injury." *Smith v. Lind*, No. 14-cv-796-slc, 2016 WL 6210688, at *4 (W.D. Wis. Oct. 24, 2016) (citing *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010)). When there are continuing Eighth Amendment violations, the limitations period begins on the date of the last incidence. *Heard v. Sheahan,* 253 F.3d 316, 318 (7th Cir. 2001).

There are also tolling requirements the Court must consider. Federal courts must toll the statute of limitations period while an inmate is exhausting his administrative grievances. *Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001). Recent Seventh Circuit decisions have clarified that the grievance tolling period starts when a plaintiff's claim accrues, not when the plaintiff files his grievance. *See Schlemm v. Pizzala*, 94 F. 4th 688, 692–93 (7th Cir. 2024) (Hamilton, J., concurring)

(citing *Bowers v. Dart*, 1 F 4th 513, 518 (7th Cir. 2021)); *see also Harper v. Bradley*, No. 23-CV-00912-SPM, 2025 WL 435923, at *3 (S.D. Ill. Feb. 7, 2025). In accordance with the prison mailbox rule, the court considers a complaint to be filed when it is handed to a prison official for mailing—the filing date is not the date the complaint was received by the Court. *Moton v. Pryor*, No. 1:23-cv-01740, 2023 WL 7553846, at *2 (S.D. Ind. Nov. 14, 2023).

Defendant Myers argues that all of Plaintiff's claims against Myers are barred by the applicable two-year statute of limitations governing his claims. (Doc. 32). There are two components to this argument. As an initial matter, it is not disputed that the last constitutional violation alleged by Plaintiff occurred on March 30, 2020, and that Plaintiff fully exhausted his grievance on October 21, 2020. (*Id.*, p. 6). Myers argues, however, that because Plaintiff did not file his grievance with the prison until April 26, 2020, the 27-day period between March 30, 2020 and April 26, 2020 counts towards the statute of limitations; under the Prison Litigation Reform Act only the time from April 26, 2020 to October 21, 2020 was tolled. (*Id.*, p. 6–7). As a result, Myers argues that Plaintiff's two-year limitations period expired on September 24, 2022 and, thus, Plaintiff's November 1, 2022 filing was untimely. (*Id.*, p. 7).

First, this Court disagrees with Defendant's analysis that the 27-day period from March 30, 2020 to April 26, 2020 was excluded from the tolling period of the statute of limitations. The Seventh Circuit has made clear that the statute of limitations is tolled from the accrual of the constitutional violation to the date of the exhaustion of the grievance, *see Schlemm* 94 F. 4th at 692–93; here, the final constitutional violation Plaintiff alleges took place on March 30, 2020 and the

Administrative Review Board denied Plaintiff's grievance #1149-09-20 on October 21, 2020. (*See* Doc. 38, p. 2; Doc. 32, p. 2). This Court finds that this entire time frame from March 30, 2020 to October 21, 2020 was tolled.

Second, this Court also disagrees with Defendant's argument that Plaintiff missed the filing deadline. While the docket sheet for this matter reflects that the Clerk's Office for this Court received Plaintiff's Complaint on November 1, 2022, and opened the case and filed the Complaint on that date, Plaintiff's Complaint contains a notarized statement signed on October 21, 2022 indicating that he mailed a copy of the Complaint to the law library clerk to be electronically filed. (Doc. 1, p. 23). Taking the facts in light most favorable to Plaintiff, it is clear that Plaintiff timely tendered a copy of his Complaint with a prison official before the expiration of the statute of limitations period; thus, this Court finds his Complaint was timely filed. Accordingly, the Court finds that Plaintiff's claims are not time-barred.

## II. Eighth Amendment

In the context of bodily searches of prisoners, the Eighth Amendment protects prisoners from searches that are intended as a form of punishment. *Henry v. Hulett*, 969 F.3d 769, 781 (7th Cir. 2020). Only those searches which are "maliciously motivated, unrelated to institutional security, and hence totally without penological justification are considered unconstitutional." *Whitman v. Nesic*, 368 F.3d 931, 934 (7th Cir.2004) (citation and internal quotation marks omitted). A prison guard carrying out a prison security measure can violate the Eighth Amendment "by performing some action that is intended to humiliate the victim or gratify the assailant's sexual desires." *Gillis v. Pollard*, 554 F. App'x. 502, 505 (7th Cir. 2014)

(citation and internal quotation marks omitted). To succeed on an Eighth Amendment claim, a plaintiff must therefore show that the search was "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun v. Detella*, 319 F.3d 936, 939 (7th Cir. 2003). The Seventh Circuit has stated that "[s]earches are penologically justified when reasonably related to finding contraband that threatens the safety and security of the prison." *Chatman v. Gossett*, 766 F. App'x 362, 364 (7th Cir. 2019) (citing *Peckham v. Wis. Dep't of Corr.*, 141 F.3d 694, 695–97 (7th Cir. 1998); *Del Raine v. Williford*, 32 F.3d 1024, 1029, 1041 (7th Cir. 1994)). In *Chatman*, for example, the prison presented uncontradicted evidence that the searches were intended to prevent contraband items from leaving the bakery, which the Court held was a valid penological justification for the search. *Chatman*, 766 F. App'x at 364.

Defendant Myers argues in his Motion for Summary Judgment that Plaintiff's Eighth Amendment claims regarding the three search incidents, even when evaluating the facts in light most favorable to Plaintiff, do not rise to the standard Plaintiff is required to meet to establish a violation of a constitutional right. (*See* Doc. 32, pp. 8–11). As noted *supra*, Plaintiff must show that the searches were "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun*, 319 F.3d at 939. Defendant argues that the searches each served the legitimate penological purpose of ensuring inmates were not removing contraband from the kitchen. (*See* Doc. 32, p. 9).

It is clear from the facts that Van Pelt cannot establish Eighth Amendment claims with respect to the February 28, 2020 and March 4, 2020 pat-down searches,

nor with respect to the March 30, 2020 strip search. It is not disputed, and Plaintiff testified at his deposition, that he and other workers in the kitchen had access to items like bleach, knives, utensils, and food they could not remove from the area. (Doc. 32, p. 3, ¶¶6−7; Ex. B 30:6−25, 31:1−8). In addition, it is not disputed that correctional officers had the authority to and would search Plaintiff and other inmates for contraband upon leaving the kitchen. (Doc. 32, ¶¶ 5, 6−7; *id.* Ex. B 33:9−12, 30:6−25, 31:1−8). Defendant Myers explicitly asked Plaintiff during the February 28, 2020 search whether he had bleach on him, and on March 4, 2020, he asked Plaintiff what he had on him and whether it was bleach. (*See* Doc. 32, ¶¶ 8, 11; *id.* Ex. B 28:2−25, 35:22−25). Myers' pat-down searches, including around Plaintiff's private areas and region, was warranted in light of the fact that, as Plaintiff testified, inmates would conceal contraband like bleach in their pants. (Doc. 32, ¶ 9; *id.* Ex. B 21:2−25, 22:1−8).

Plaintiff argues in his Response that the strip search on March 30, 2020 violated his Eighth Amendment rights by subjecting him to an embarrassing strip search during which he stated his private parts were exposed at some point, with his boxers being pulled down as well as his pants. (Doc. 38, p. 3). This Court observes that it is in his Response to Defendant's Motion for Summary Judgment that Plaintiff first makes this factual claim; nowhere in his grievance filed on April 26, 2020 (Doc. 32, Ex. A), in his Complaint (Doc. 1), or in his Deposition (*see* Doc. 32, Ex. B) does Plaintiff claim that his boxer shorts were pulled down, that he was naked from the waist down and exposed to Defendant Myers, or that Defendant Myers touched him without his boxer shorts having been on. To establish a genuine issue of material fact,

Van Pelt *must* offer more than conclusory allegations; he must offer specific facts supported with admissible evidence. *See Payne*, 337 F.3d at 773; *Midwest Imps., Ltd. v. Coval*, 71 F.3d at 1317. Van Pelt has no evidence beyond his own argument in his Response, stating that "[t]he Defendant must have misunderstood what we said" to support this conclusory allegation. (Doc. 38, p. 3).

In addition, this Court finds that Van Pelt has not produced sufficient evidence to establish that Myers conducted the searches in a harassing manner intended to humiliate and inflict psychological pain. The uncontroverted facts establish that the March 30, 2020 strip search was done privately in a bathroom and Plaintiff does not introduce evidence or claim that the February 28, 2020 or March 4, 2020 searches were done in view of other inmates or officers. This Court does pause to acknowledge the fact that Defendant made numerous comments about Defendant's private parts, including stating that he was "dick watching" and that he wanted Plaintiff to show him his private parts, as well as asking Plaintiff what he had in his pants. (*See* Doc. 1, p. 7; Doc. 8, p. 2; Doc. 32, ¶¶ 8, 9; *id.* Ex. B 21:2–25, 22:1–8, 28:2–25, 32:1–7). However, this Court finds that these comments alone, in light of the entire circumstances and the penological justifications for the search, do not rise to the level of an Eighth Amendment violation. *See Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009) (stating the plaintiff was subjected to daily searches in front of other inmates done in knowing violation of the prison's regulations during which guards did not regularly change their latex gloves and made demeaning comments while searching naked inmates); *see also Plummer v. Belford et al.*, Case No. 3:20-cv-01247-SPM, 2024 WL 5165963 at *5 (S.D. Ill. Dec. 19, 2024).

Accordingly, this Court finds that, based on the evidence in the record and viewing all facts and inferences in favor of Plaintiff, Defendant Myers is entitled to summary judgment on Plaintiffs' Eighth Amendment claims. Van Pelt has failed to introduce admissible evidence to demonstrate a material factual dispute to overcome summary judgment with respect to his Eighth Amendment claims, and accordingly, Defendant Myers is entitled to summary judgment as to Count 1.

## III. Fourth Amendment

In evaluating a prisoner's Fourth Amendment claim regarding a strip search, the court evaluates the reasonableness of the search, considering "the scope of the particular intrusion, the manner in which it was conducted, the justification for initiating it, and the place in which it is conducted." *Henry*, 969 F.3d at 779 (quoting *Bell v. Wolfish*, 441 U.S. 520 (1979)). Strip searches can be considered reasonable under the Fourth Amendment when they are performed under an officer's reasonable suspicion that the prisoner is in possession of contraband. *Brown v. Polk County*, 965 F.3d 534, 538–40 (7th Cir. 2020). "It is well established that strip searches of inmates performed for security purposes are reasonable as a general matter." *Id.* at 853 (citing *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 328–29 (2012); *Peckham v. Wis. Dep't of Corr.*, 141 F.3d 694, 696–97 (7th Cir. 1998)). "Courts must afford prison administrators wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Henry*, 969 F.3d at 783 (quoting *Bell*, 441 U.S. at 547).

Plaintiff brings his Fourth Amendment claim against Defendant Myers with respect to the March 30, 2020 search only. Defendant argues that Plaintiff's Fourth Amendment rights were not violated by the March 30 strip search because it was a reasonable and minimally invasive action that was necessary to maintain security at a correctional institution. (Doc. 32, p. 11). Defendant argues that the search was reasonable in light of the goal of ensuring institutional safety by confirming that no contraband left the kitchen, in light of the fact that Plaintiff was taken to a bathroom to be searched privately and out of view of others and because the search did not require Plaintiff to show private areas. (Doc. 32, p. 12).

Upon consideration of the facts in the record viewed in the light most favorable to Plaintiff, this Court finds that Van Pelt cannot establish a Fourth Amendment claim with respect to the March 30 strip search. As an initial matter, Plaintiff's arguments and testimony to his belief that Myers singled him out for the search or conducted the search for purpose of harassing him does not bear on this Court's objective reasonableness analysis. *See Plummer*, No. 20-CV-01247-SPM, 2024 WL 5165963, at *3 (citing *Henry*, 969 F.3d at 783). Plaintiff was part of a group of individuals leaving the kitchen at that time who were initially searched and walked through a medical detector before the group was brought to a separate building for an additional strip search. Moreover, as discussed above, the record establishes that the searches were conducted for purposes of ensuring that items like knives, forks, and bleach were not removed from the kitchen, and correctional officers, including Myers, had the authority to and would search Plaintiff and other inmates for contraband upon leaving the kitchen. The strip search was focused on the areas in

which inmates were known to occasionally store contraband such as bleach (namely, in the pants), was done in a private and separate room from other inmates, and, as discussed *supra*, was performed with the inmates' boxer shorts on; thus, this search was no more intrusive than necessary to locate contraband.

Accordingly, this Court finds that, based on the evidence in the record and viewing all facts and inferences in favor of Plaintiff, Defendant Myers is entitled to summary judgment on Plaintiff's Fourth Amendment claims because Van Pelt has failed to introduce admissible evidence to demonstrate a material factual dispute to overcome Defendant's Motion for Summary Judgment. Accordingly, Defendant Myers is entitled to summary judgment as to Count II.

## IV. First Amendment

To establish a prima facie case of First Amendment retaliation, Plaintiff must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Whitfield v. Spiller*, 76 F.4th 698, 707–08 (7th Cir. 2023) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)) (internal quotations omitted). "The motivating factor amounts to a causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020) (internal quotations omitted). To defeat summary judgment as to his First Amendment retaliation claim, Van Pelt must "furnish evidence that would allow a reasonable jury to find that his protected speech was at least a motivating factor" for Myers' response.

*See id.* at 681. "Although a nonmoving party's own deposition may constitute affirmative evidence to defeat summary judgment, conclusory statements in the deposition do not create an issue of fact." *Williams v. Seniff*, 342 F.3d 774, 785 (7th Cir. 2003) (citing *Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 843 (7th Cir. 1996)). Indeed, whether self-serving deposition testimony may satisfy a party's evidentiary burden on summary judgment "depends on whether the statement is based on personal knowledge and whether it is grounded in observation as opposed to mere speculation." *Whitlock v. Brown*, 596 F.3d 406, 411–12 (7th Cir. 2010) (citing *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003)).

To rebut a plaintiff's prima facie retaliation case, a defendant must show, by a preponderance of the evidence, that he would have reached the same decision even in the absence of the protected conduct. *Whitfield*, 76 F.4th at 711–12 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The question is "about cause, not intent: did the officer impose the adverse action in response to the protected activity?" *Id.* "Once established, the petitioner must demonstrate the proffered reason is pretextual or dishonest." *Manuel*, 966 F.3d at 680.

Plaintiff alleges that the ticket he received for theft and possession of contraband on March 30, 2020 following the strip search was falsified by Defendant Myers for purposes of retaliating against him for his request to speak to a lieutenant before and during the strip search. (*See* Doc. 1, p. 7; Doc. 8, p. 3; Doc. 32, Ex. B 53:3–11). Defendant Myers concedes, for purposes of this Motion, that requesting to speak to a lieutenant to discuss the validity of the strip search is protected speech; he also concedes, for purposes of this Motion, that producing a false disciplinary ticket,

as alleged, is a deprivation likely to deter future First Amendment activity. (Doc. 32, p. 15). Nonetheless, Myers argues, Plaintiff has failed to demonstrate that Defendant's actions were taken for purposes of retaliation for his speech, and, even if he could meet that threshold, that Myres can show a non-retaliatory reason for his actions. (*Id.*). Myers argues that Plaintiff has failed to provide evidence beyond his own conclusory statements to establish that Myers wrote him a false disciplinary report in retaliation for Van Pelt requesting to speak to a lieutenant during the strip search. (*Id.*). Moreover, Myers argues that he had a legitimate penological reason to conduct the search, as no person in custody leaving the kitchen was allowed to bring items outside of the kitchen. (*Id.*).

On this record, is clear to the Court that Plaintiff has failed to put forth sufficient evidence to defeat summary judgment as to his First Amendment retaliation claim. As an initial matter, Plaintiff has failed to meet his burden of introducing admissible evidence that sufficiently shows the existence of Defendant Myers' desire to take retaliatory action for Plaintiff's activity of requesting the presence of a lieutenant during the strip search. Plaintiff makes conclusory statements that "Myers was upset about Plaintiff questioning his authority until he decided that he found 4 gloves of bleach on the inner dietary walk," to which Plaintiff cites no supporting evidence in the record to establish; he also attempts to rely on his pleadings and statements in his deposition that the disciplinary report was falsified and that he did not have bleach on him on that day. (*See* Doc. 38, p. 4). However, this is not enough to defeat summary judgment, which requires the non-movant to present admissible evidence that sufficiently shows the existence of each element of its case

on which he will bear the burden of proof at trial. *See Midwest Imps., Ltd.*, 71 F.3d at 1317.   Plaintiff wholly fails to present to this Court a causal link between his request for a lieutenant and the disciplinary report. Moreover, Plaintiff fails to state in his deposition any facts or information as to his belief that Myers acted with retaliatory motive, nor does he establish personal knowledge of Myers' motivations or evidence to support his contention.

Plaintiff also attempts to support his allegation that Defendant Myers acted with retaliatory motive by stating that there exists video footage from the South Tower Cameras which would establish that it was not Plaintiff who was searched by Defendant Myers on the inner walk. (Doc. 1, pp. 7–8; Doc. 38, p. 4). He further states that he requests the Court subpoena the camera footage. (Doc. 38, p. 4). This Court first notes that the deadline for discovery has passed and Van Pelt's opportunity to request discovery from Defendant Myers or seek to compel production of discovery has long passed. Second, Van Pelt again points to no evidence in the record that establishes the existence of this footage beyond his own statements and contentions that it exists and is favorable to his position; without more, this Court is not satisfied that Van Pelt has met his burden of establishing admissible evidence to rebut Myers' Motion for Summary Judgment. Accordingly, this Court finds that summary judgment in favor of Defendant Myers as to Count III is warranted.

## V. Qualified Immunity

Defendant Myers also argues he is entitled to qualified immunity shielding "government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the

challenged conduct." (Doc. 32, p. 18 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011))). "Qualified immunity is an affirmative defense, but once it is raised the burden shifts to the plaintiff to defeat it." *Holleman v. Zatecky*, 951 F.3d 873, 877 (7th Cir. 2020) (citing *Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001)). "To overcome qualified immunity, the facts viewed in the light most favorable to [the plaintiff] must 'show that the defendant[s] violated a constitutional right' and that 'the right was clearly established at [that] time.'" *Id.* (quoting *Estate of Clark v. Walker*, 865 F.3d 544, 550 (7th Cir. 2017)). Notably, [i]t is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Henry*, 969 F.3d at 785 (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)). "The right must be established not as a general proposition but in a particularized manner so its contours are clear to a reasonable official." *Id.* (citing *Reichle v. Howards*, 566 U.S. 658, 665 (2012)).

Defendant argues that "[u]nder the first prong of the analysis, the facts alleged here do not give rise to a constitutional violation" because Defendant, in conducting the strip searches and writing the alleged disciplinary report, did not violate Plaintiff's First, Fourth, or Eighth Amendment rights. (Doc. 32, p. 19). "Under the second prong of the analysis, Defendant is also entitled to qualified immunity because if he were to be held liable on the facts alleged it would constitute a heightened standard for what constitutes a First, Fourth, or Eighth Amendment constitutional claim." (*Id.*). Myers argues that finding Defendant violated Plaintiff's First Amendment right "would mean any staff member who is conducting a search of any

person in custody would not be allowed to go forward with that search if the person requested to speak with another staff member with a higher rank," and thus stymie security procedures in the facility. (*Id.*). Additionally, Defendant argues that finding a Fourth Amendment violation here would mean that any time a strip search was conducted, it would constitute an unlawful seizure; and finding an Eighth Amendment violation would mean staff is "not capable of conducting a search too 'thoroughly' or accidentally touching a person's private parts during a search." (*Id.*).

As assessed *supra*, even viewed in the light most favorable to him, Plaintiff's First, Fourth, and Eighth Amendment claims do not survive scrutiny and, thus, fail the first prong in the qualified immunity analysis. As the Seventh Circuit has held, when a plaintiff fails to prove that his or her rights were violated, "there is no need to analyze whether it was clearly established," and thus the Court declines to speculate as to the second prong of the analysis. *See Holleman v. Zatecky*, 951 F.3d 873, 882 (7th Cir. 2020).

## CONCLUSION

For the reasons stated above, Defendant Myers' Motion for Summary Judgment (Doc. 32) is **GRANTED**. This case is **DISMISSED with prejudice**. The Clerk is **DIRECTED** to close this case on the Court's docket.

**IT IS SO ORDERED.**

**DATED:   September 24, 2025**

*s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**